(21 Misc. Rep. 559.)

### STANDARD FERTILIZER CO. v. VAN VALKENBURGH.

(Supreme Court, Trial Term, Greene County.   June, 1897.)

1. LIABILITY OF AGENT—CONVERSION.

An agent who is authorized to sell on credit—he guarantying payment—is not liable, in an action for conversion, for goods sold by him on credit, and not paid for.

2. SAME—SCOPE OF APPARENT AUTHORITY.

An agent of a manufacturing company, authorized to appoint local agents for the sale of the company's products, to allow such local agents to sell on credit, and to superintend their acts, has apparent authority to allow an agent appointed by him to use the company's products in his own business, so that such use would not constitute a conversion.

Action by. the Standard Fertilizer Company against Corydon K. Van Valkenburgh.   Judgment for defendant.

F. L. Michael and Frank H. Osborn, for plaintiff.
Crowell & Kerr, for defendant.

CHASE, J.   The plaintiff is a foreign corporation engaged in the manufacture of fertilizers.   On the 1st day of April, 1893, it appointed the defendant its agent in the town of Athens, N. Y., for the sale of its fertilizers.   This appointment was termed an "agreement," and was in writing, and provided, among other things, as follows:

"Goods to be consigned to you, and to be sold on account of Standard Fertilizer Co.   All sales shall be guarantied by you, and all cash or notes, or other proceeds of sales, shall be sent to the Standard Fertilizer Co. as and when received.   Notes taken for sales to be indorsed by you."

The agreement also provided:

"You are to settle in full for all spring sales by November 1st, and for all fall sales by January 1st, next, either in cash or notes, bearing interest, approved by the Standard Fertilizer Co."

It also provided:

"The Standard Fertilizer Co. agrees to pay you as commission a sum equal to the amount received from you in excess of prices named in your consignment invoices; and on all sales for which you return to them cash July 1st for spring sales, Nov. 1st for fall sales, they will pay an additional commission of $1 per ton."

Thereafter the plaintiff shipped to the defendant fertilizers amounting, at the price named in the consignment invoices, to $895.25.   The defendant used a portion of such fertilizers on his farm, and the portion so used by him, at the prices named in the consignment invoices, amounted to $154.55.   The balance of the fertilizers was sold by the defendant, and the defendant has collected and paid to the plaintiff therefor in full, except that there still remains uncollected by the defendant and unpaid to the plaintiff the sum of $31.95.   This balance is still owing by the persons to whom such fertilizers were sold by the defendant.

The agreement is somewhat contradictory in its terms, in that it provides that "cash or notes, or other proceeds of sales, shall be sent to the Standard Fertilizer Co. as and when received," and then further provides that the defendant is to "settle in full for all spring sales by November 1st, and for all fall sales by January 1st, next, either in cash or notes, bearing interest, approved by the Standard Fertilizer Co."   If possible, effect must be given to all parts of the agreement; and the intention of the parties to the agreement should be carried out, if it can be fairly spelled out of the agreement itself.   In my opinion, the parties did intend that the defendant, under the agreement, should occupy a fiduciary relation towards the plaintiff; and notwithstanding the provision of the agreement that settlements should be made for spring sales by November 1st, and for fall sales by January 1st, the other part of the agreement, providing for sending to the plaintiff the cash, notes, and other proceeds of sales as and when received, is binding upon the defendant, and required him to send to the plaintiff the identical proceeds of all sales immediately on receipt of the same, and

not wait until November 1st or January 1st, as the case might be, to transmit such proceeds. The defendant therefore had no right, under this agreement, to mingle the proceeds of fertilizers sold by him in any way with his own individual cash or property. The agreement clearly provides for taking notes and other proceeds of sale by the defendant for fertilizers. The agreement also expressly provides that all sales shall be guarantied by the defendant. The provision of the contract providing that settlements shall be made in full by November 1st and January 1st, as above stated, assumes that sales will be made for notes or other proceeds; and I think it may fairly be inferred from the agreement that the parties contemplated sales by the defendant to farmers on credit, with or without notes, thus giving to such farmers an opportunity to harvest their crops and pay for the fertilizers so purchased on or before November 1st. The postponed day of settlement must have been provided to afford a reasonable time for settlement for sales where credit had been given. If sales were only to be made for cash or notes to be first approved by the plaintiff, there was no reason for the guaranty; and, if sales were not to be made on credit, there was no reason for postponing the day of final settlement, as a final settlement would take place after every sale. The agreement was intended to give to the defendant authority to sell the fertilizers on such terms as he, in his judgment, thought best. The security of the plaintiff rested in the fact that the fertilizers and proceeds of fertilizers remained its property, and in the further fact that the defendant was, by the agreement, the guarantor of all sales. The plaintiff was further protected by a provision in the contract requiring defendant to render to the plaintiff at any time a statement of sales, with a list of purchasers' names in full, and the further provision that plaintiff could at any time revoke the agency. If the defendant had the right to sell fertilizers on credit, as I hold that he had, he cannot be liable for conversion of the fertilizers so sold, even although he has failed to collect therefor. The plaintiff's remedy is by suit on the guaranty. It follows, therefore, that this action cannot be sustained, so far as the amount of uncollected bills is concerned.

I have not considered the contention of the plaintiff that the defendant was required to pay over to it the full amount received for the fertilizers, without reference to the prices named in the consignment invoices; for the reason that it appears that the amount claimed in the complaint is made up with reference to the prices named in the consignment invoices, and not otherwise, and the bills rendered to the defendant and the demands made on the defendant were all with reference to the prices named in the consignment invoices, and not with reference to the prices at which the fertilizers were actually sold.

The defendant used some of the plaintiff's fertilizers, and, unless this was done by plaintiff's consent, judgment should be rendered herein therefor. The defendant claims, however, that they were used by him with plaintiff's consent, direction, and approval. If such fertilizers were so used with plaintiff's consent and approval, or by its direction, plaintiff ought not to succeed, and cannot succeed, in this action. The contract of April 1, 1893, was made on the part of the plaintiff by W. T. Sawyer, its agent. At the time of making this

47 N. Y. S.—45

contract, and immediately thereafter, Sawyer told the defendant that, if he used any fertilizers, he wanted him to use the fertilizers of the plaintiff, and that he could use the plaintiff's fertilizers at the wholesale price; and Sawyer urged the defendant to use the plaintiff's fertilizers freely upon his crops, to make a showing, and he said to the defendant that the defendant's farm lay close to the road, where it was very plain to be seen, and fertilizers were something new in that section, and never had been introduced there, and he felt anxious that he should make as big a showing of them as he could. Similar statements were made to the defendant by Sawyer at different times thereafter, and Sawyer knew that the plaintiff owned a farm where he resided, and that the defendant used plaintiff's fertilizers from time to time on such farm. These statements constituted a consent on the part of Sawyer to the defendant's using plaintiff's fertilizers; but the plaintiff asserts that Sawyer had no authority, as agent, to give any such consent or direction, and that the plaintiff is not bound by the same. It appears from the testimony that Sawyer had been the agent of the plaintiff for several years. His business as such agent was to appoint agents for the sale of plaintiff's fertilizers, and he went to the defendant on the 1st day of April, 1893, for the purpose of soliciting defendant to become an agent for the plaintiff. It was a part of the duty of Sawyer to superintend the acts and conduct of the agents whom he appointed. He took orders from them, which were forwarded to, and filled by, the company. He made a demand of the defendant for the balance remaining unpaid, on which demand this action is founded. There was nothing unusual in his acts, or in what was said, to put the defendant upon his guard, or to require him to make special inquiry of Sawyer's authority. It is conceded that Sawyer had authority to make the written contract, and that he was authorized to superintend the acts and conduct of the agents whom he appointed. This being so, I am of the opinion that his consent to the defendant's using some of the fertilizers, as stated, was within his apparent authority. Sawyer's authority to authorize the defendant to sell fertilizers on credit apparently includes authority to assent to the defendant's using some of the fertilizers on his own farm. While the defendant is liable on his guaranty, and for the fertilizers used by him, in an action ex contractu, judgment cannot be rendered in this action against the defendant without proof of a breach of the trust reposed in the defendant by the plaintiff. Code Civ. Proc. § 549.

The complaint of the plaintiff is dismissed, with costs.